May it please the Court, James Pfeiffer, Federal Defenders, on behalf of the appellant, Mr. Lizarraga. I'll aspire to reserve five minutes. Okay. Thank you. That shows your experience level. I know. That you know it's aspirational. No things can go south. Factual findings essential to the imposing of the mandatory minimum sentence in this case were made by a judge under a preponderance standard. This violates the Sixth Amendment under Appendi and Alene. Combined with a misapplication of the guidelines relating to scoring of minor offenses, the district court erred in finding the defendant did not qualify for safety bail and the sentence must be vacated. Well, let me ask you this, if we just sort of jump to the point. I mean, first, if you're asking us to find differently than United States v. Heracli? Correct. Because we don't have direct precedent here. So you're asking us to create a split in the circuit so we can go forth and find out what the Supreme Court thinks. And then on the criminal history points, Ypez seems to be problematic for you and most of your argument is citing to the dissent, albeit five, of that. So it was an en banc case. So how do we get around Ypez? Well, should I? Yeah, just you can do them as you please. Yeah, any kind of circuit split will be a very minor kind of split because Heracli is just the same arguments that the government highlights in its own briefs and they're all ones that have been rejected by this court before. The most common example is in Buckland. The same things were argued that, well, this is not what Congress intended. It was really clear that Congress intended that drug amount was supposed to be found by a jury. Well, that didn't matter because the Constitution requires something else. The same argument was made in Buckland as well as that, well, we've made a lot of case law decisions about this, but case law gets overturned when the law is clarified. And there are, of course, the usual parade of horribles that the government brings out, that the government will, that everything will collapse, civilization will blow away if we have to find this, submit this to a jury, and submit it to being found beyond a reasonable doubt. But that was not the case in Buckland. It wasn't the case in Covey and Sandoval where the court found that apprendee required that the removed after date in an illegal reentry case had to be put in the indictment, had to be put to prove to the jury. Nothing happened. It was pretty, things went by pretty easily. The same thing could happen here. Well, not exactly because, according to your argument, the government would have to allege in the indictment the five elements of the safety valve, right? Well, not necessarily. I mean, I have to agree. Well, isn't that the logical extension of your argument? I mean, if the lane applies, they have to allege it in the indictment. All five. You can't get around that. Well, I'm not, I can't say that, I haven't looked at every one of the five factors because they're not all pertinent here. There's only one that has not been met and one that was found by the judge. And it may or may not be the case that all of them fall onto what would be considered the same kind of facts. I mean, the others are all easy. You know, were they convicted of a prior conviction or whatever. But, I mean, the safety valve is a little more complicated and a little more exercise of discretion. And is that, it would seem that they would have to do all five. And then it does seem like it would be really unruly to manage. How would it work? I mean, look at the fifth element of the safety valve. So they have to include that in the indictment. And then because the fifth element says that the defendant can wait up until the time of sentencing before they debrief, the jury would have to figure out in the merits trial, not guilty, guilty, whether or not the defendant was going to debrief prior to sentencing? Well, Your Honor, it says up to sentencing. That doesn't mean that for, in order for this to work, in order for the profit to be made, that that would be done before sentencing. Well, but so then you have, I mean, having someone become a snitch in open court on the record? Not necessarily in open court, Your Honor. This can be done in different ways. It sounds like it's just simply an evidentiary matter. How is this going to be presented to the jury? How can the government present this? Can it even be stipulated to? I mean, for instance, the finding of a prior conviction. I know that right now under Supreme Court authority, that's not required in the federal court. But, for instance, in California, that's always been a requirement that the jury find the prior conviction for a sentencing enhancement. That's often stipulated to. Nobody really contests that. But it wouldn't be stipulated to in the context of a jury trial, because if the defendant had, was safety valve eligible because they made a proffer, in all likelihood, they wouldn't be going to trial, because they already would have implicated themselves in the proffer, which can be used under every circuit's law in the trial. So you've got a, it's a pretty screwy situation for a district court judge trying to figure out how to apply it. I understand, Your Honor, and part of this, of course, arises, a very straightforward reason this all arises, because Congress enacted this provision at a time when they thought that there was no requirement for these to be found by a jury. In fact, they explicitly said to be found by the court. Well, that could be the case, that this was, this statute was written in a way that doesn't comport with the Sixth Amendment as we now understand it. Whether it can now be construed and interpreted, whether practices can be adopted in order to meet the constitutional requirements, that is a question for the, to be worked out in the future. And it may be the case that Congress may decide, this is more trouble than it's worth, especially at a time when Congress is considering whether mandatory minimums as a whole are more trouble than they're worth, and are considering doing away with them. And this may be another indication that, well, maybe there's just too much constitutional question involved in imposing mandatory minimums, because the procedure that is necessary for, to make the constitutionally, the safety valve to work, which they obviously want to have available, is just going to be too complicated. But that's not a reason for this court to not follow the law. As in Burrage, where the court, the Supreme Court said, these policy questions are endlessly fascinating, but we have to interpret the law as it is, even if there are policy problems that would advise us to do it a different way. Let's just assume for the moment that we don't agree with you. But I have no, I'm just making that assumption, because we obviously haven't talked about this. So I, and so then we have to go look at all the points here, the way that the judge did the points. Yes. If he has, let's, and let's also assume that maybe one of the things, the judge wasn't right. At what point is it mandatory, at what point can we look at harmless error, or does it have to go back in terms of, because for the safety valve to work, he can have how many points? Just one. Just one. So let's say, and right now he has five, right? Correct. So let's say I think that there's error in one, or error, you know, or I think the way you have it, I think there's one, two, two, or something like that. Two constitutional errors, one guy might have. Yeah. But let's just say, let's just say the judge didn't do it right on, that he'd been on probation for over a year or whatever, or something like that, is that, if that's the only one that I were to find being lacking, is there any reason to send it back, because he's still not eligible, right? No, Your Honor. I mean, if the court doesn't find that there was error in all three, that's. So he has to, he has to win on all of them to get a remand on that? That's right, Your Honor, because there are four excessive points that were created by these three errors, and all four points have to disappear in order for him, for his score to correctly reflect. The court held an evidentiary hearing. Pardon? The court held an evidentiary hearing on this. Well, it had a second hearing, there wasn't. It called an evidentiary hearing, and it said that it was, and don't we judge what the court concluded by the preponderance of the evidence standard? You take issue with the computer report. Correct, Your Honor, but as I pointed out, it would be constitutional error for the court to make that finding by a preponderance, because it's an Alene fact the same way, an Apprendi fact the same way that the on probation is. On probation is clearly an Apprendi fact, as this court recognized in Butler. Butler, so Butler is your principal case that you rely on. That's right, and I don't think any court has considered the question of whether intervening arrest is also an Apprendi fact, but considering that the reasoning of Butler was that, well, on probation is too far afield from the verdict, the jury verdict, to qualify for Almendar's Taurus exception. Well, certainly finding an arrest is even further far afield. An arrest is not a conviction. It's not a fact about a conviction. It's simply an independent fact that's out there. What this court said in Ameline is an extroverted fact. All of those have to be found. Those are Apprendi facts. Those are facts that have to be submitted. How many circuits would we have to go against in order to follow your lead? Exactly one. I checked again to see if any other cases have cited Harakali. There are cases that cite it. They're all First Circuit cases, so it's all within the First Circuit. The Juarez-Sanchez in the Tenth Circuit and Jack in the Second Circuit that are referred to, they don't necessarily? The Second Circuit case, Your Honor, that I noted is a much older case. It's still relying on what it actually ruled on. Despite the language that they have in there, the way they actually ruled was exactly the same way that Felix ruled. They simply said, well, Harris says the safety valve doesn't apply to the maximum. It only applies to the minimum, and, therefore, there's no Apprendi problem. So I say that case is an apposite because it's still relying on the prealien law and the prealien reasoning, even though it may have language that the government cites as being favorable to it. I didn't really consider this question, which is that a lien requires that these facts that go to setting the bottom, the floor, are just as much subject to the Sixth Amendment protections. So would you like to be close to your aspiration here? Yes, thank you very much, Your Honor. Good morning. Good morning. May it please the Court, Daniel Zip on behalf of the United States. Your Honors, in Eileen, the Supreme Court held that only those facts that serve to aggravate or increase the legally prescribed punishment need to be proven to a jury and found beyond a reasonable doubt. The five safety valve factors under 3553F in this case do not increase or aggravate the range of sentencing. They offer a relief to a limited set of would-be cooperators. If you look at the history of how safety valve came into effect, it was initially enacted to correct an imbalance in an earlier effort to amend the Controlled Substance Act from 1986, when Congress provided a mechanism for relief from mandatory minimum sentences for those defendants who were able to provide substantial assistance to the United States. As a result of that, essentially more culpable defendants who had more information to offer the United States were able to get lower sentences, whereas sort of lower-level individuals who wanted to cooperate but couldn't were still subject to the 10-year mandate. But where does all that lead? Where does that take us? Where that leads is an analysis of whether the safety valve factors themselves should be considered, as defense argues, a prerequisite to the imposition of a 10-year mandatory minimum or whether they should be interpreted as a mechanism for relief below the 10-year mandatory minimum. The defense relies in large measure on the Butler case, and what's your answer to that? My answer to that, Your Honor, is that if you look at the facts of the Butler case, that was a California state case where there was a specific sentencing range available for defendants. In the statute in that case, that range was increased. Both the bottom end, the ceiling and the floor went up if a defendant was found to be on probation. So the question of probation was considered to be a fact that had to be submitted to the jury? Correct. And in this case, if 21 U.S.C. 841B, if that sentencing section had a specific code that said, you know, a 10-year mandatory minimum shall only apply to defendants on probation, then that would be analogous to Butler, and that would have to be proven. But that's not what we have here. The only way that probation even comes into play in this question is one of the five factors for relief from the mandatory minimum. So what happens to this defendant if he's eligible for safety valve relief? He would be sentenced under the sentencing guidelines without regard to the 10-year mandatory minimum. Which would result in what? Possibility of a lesser sentence? Yes. Because he got the minimum, 120, right? He did, yes. And I think the district court in this case said he would have given a lower sentence below 120 if he had the option. But this defendant had five criminal history points, so he was subject to the mandatory minimum sentence. So just my question that I asked of counsel for the appellant here in terms of looking at the five points, once you have one point, then you're not eligible? Once you have two points. Two points. So you can have one point. Yes. And so once you're over one, then there's no discretion anymore? So even if we knocked out all but one? Correct. He essentially has to win on all of his arguments in order for it to have any sense in remanding. Because as long as there's a total of two points, then a mandatory minimum applies regardless of what happens to the other points. On that issue, even if the court were to find in this case that the Eileen factors did apply to all the safety valve factors, it would still be harmless in this case. Because neither side is essentially no factual dispute about the fact that this defendant was on probation at the time that he crossed the border with heroin in his vehicle. But isn't there a structural problem with the argument that you're making? In other words, we just forget about the requirement that this be submitted to a jury? I think the case law is clear that the Apprendi error is subject to either plain error or harmless error review on appeal. So in this case, the Yepas, the Supreme Court, or excuse me, this Court made it clear that regardless of what a defendant does with a known pro tonque order to try to change his probation status, if he crosses the border at a time when he's on probation as a factual matter, then he gets two points under 4A1.1D. That's exactly what happened in this case. This defendant was on probation, and he gets two points for that. So even if this court were to find that that were something that all the factors from safety valve, including that probation, should have been proven to a jury, the fact remains that on the harmless error review or on plain error review, there's no dispute that he was on probation at the time that he crossed. Because the other side agrees. Essentially, they made no factual dispute. Their only argument below was that... That we should follow the dissent. Correct, that the known pro tonque order should be given legal merit. Well, so in your view, that would require us, which is tempting always, but we would have to, which we can't do, go over an en banc court. Correct. So you're saying that that is, Yepas is on point? It is. At least for the harmlessness analysis, there's really no way around the two points for being on probation after Yepas. And that's the only one that skirts the defendant's argument that all of this should have gone to the jury. Well, I think the same harmlessness analysis would also apply to the third point, not quite as strongly because the defendant contested it below, but the point about the intervening arrest. Under a harmless error review, this court considers, essentially, if that intervening arrest were required to have been proven to a jury beyond a reasonable doubt, based on what's in the record at sentencing, would the jury have found beyond a reasonable doubt that there was an intervening arrest? Well, it seems to me on one of those that the district court, I've got some real questions on the, received one criminal history point for a past conviction where the defendant received a term of probation of more than one year, but he received a sentence of three years formal probation for the conviction, but he only served 311 days of that probation before it was terminated. That's correct. So it seems the district court was wrong on that. Well, I'm not, certainly that's the weakest of the five points that we're arguing. Well, you can say it's wrong and still win. I mean, that's the, I'm just, why isn't that, why wasn't the district court wrong on that? Well, I think, essentially, in Alba Flores, this court considered that question. There's, in Yepez, the court considered a defendant who was on probation, served more than a year, and then tried to go back in time within the pro tempore and change it. In Alba Flores, it considered, in fact, a situation very similar to this, where he had gone back and corrected it within that first year, and the court declined to address the issue and said that. But in U.S. v. Mejia, and that's a Ninth Circuit case, the measure of the term of probation in Section 4A1.2c1 is the time actually served on probation, not the time to which the defendant was initially sentenced. And here, at 311 days, it's done, which is less than one year. That's correct, Your Honor. Is my math wrong? No, that's accurate. And if you look, the court in Alba Flores actually said that that language in Maya has a strong, but certainly not inelectable, pull towards the conclusion that the reduction in probation within that first year would eliminate the criminal history point. But both Maya and Alba Flores came before… Are you calling Maya, is that Mejia? Oh, Mejia, yes. Oh, okay. Both of those cases came before Yepes, and Yepes did outline sort of an independent federalism concern in these nonprotont kind of cases, that state courts should not be allowed, solely for the purpose of affecting the federal sentencing, to go, essentially go and try to issue, I think the court said, by judicial fiat, a ruling that would affect the mandatory minimums in a federal case. So what are you asking us to do, to hold that it doesn't make any difference, because it's harmless error anyway, to ignore the Heracli point? Can you repeat the question? What are you asking us to hold, that even if we were to conclude that this whole thing should have gone to a jury, it was harmless error? What I'm asking you to conclude is to follow the same conclusion that First Circuit did, and hold that the safety valve factors do not increase the range of sentencing and do not fall under Apprendi. But if we disagree with you, then what are you asking us to do? I think, then I would ask you first to find that it was harmless… Harmless error. …because neither side is contesting that the defendant was factually on probation, and therefore would have at least gotten two points under 4A1.1D. And then, to go back to Your Honor's point, on that Alba Flores-Yepes question, he did serve less than one year of probation. And Mejia does suggest that that, or states pretty clearly that that would not count as one criminal history point. But that is an issue that, after Yepes, really will never be relevant again. But did he, maybe factually, is, in this case, the guy, the defendant crosses the border, you know, gets arrested, does all, then he goes back and tries to get rid of it. If, in the normal course of events, I mean, sometimes people have their probation terminated earlier, is that a different situation than where someone goes in to specifically try to, you know, I mean, they're trying to get a state court, as you say, by judicial fiat to change something. Isn't that different than when it happens by the natural course of things? I believe that it is, Your Honor. In Mejia, it was a case where the state court imposed a two-year summary probation term and then almost immediately terminated probation. And then it was years later when the defendant had his federal offense. And then in that context, the court said, look, it's a question of should one point apply. Was this a serious enough sentence for one point to apply? Well, in our facts here, did he go back and terminate his probation after he crossed the border? He did, yes. So he did the same with – no, okay, the non-protonc was on the two points. But on the one point of how much time he served, did that happen in the natural course of things, or did he do that after he got arrested here? No, it was the same order. He did it after he was arrested. So the non-protonc order went back in time and terminated his probation the day before he was arrested crossing the border. So I would argue that under Yepes, the federalism concerns of going back to the state court, having it go back in time, change the probation status to a date immediately before the federal offense, raises the same concerns that the court outlined in Yepes. And furthermore, in Yepes, the takeaway from that case is that a defendant will get two points in his criminal history for crossing the border on probation. There's – it will never make a difference in safety bail – for safety bail purposes, whether that defendant receives an additional third point for being on probation for more than one year. In essence, he'll always get the two points after Yepes. So this issue left open in Alba Flores of whether Mejia applies or whether Yepes applies, that is essentially always going to be a moot point, whether he gets that third point. Okay. And if Your Honors have any further questions? We don't appear to. Thank you. Thank you. Your Honors, the first thing, the guideline range that was calculated for Mr. Lizard was 78 to 97 months. So that was probably the sentence the court would impose. But for it reluctantly having to impose a mandatory minimum. Mr. Feigt, your client pled in this case. Yes. And as part of the plea, he gave up his right to a trial by jury, correct? That's correct. Okay. What effect, if any, does that have on your alien argument? Well, none, I think, Your Honor, because I think, honestly, though I think that the Apprendi argument is fully preserved because it was argued, it was counter-argued, and the judge actually ruled on the Apprendi issue. In fact, the reality is that under the case law, we were foreclosed from arguing at that point that safety valve was required because of the state of the case law at that time under Harris and other Ninth Circuit cases. You weren't precluded from anything. Your office argues everything out of the sun. But you also don't want to irritate a district judge by raising frivolous arguments. I've never seen your office fail to do that before. We never. We never raise frivolous arguments, Your Honor. There's always a reasonable basis for extending current case law for it. And that's why I think what we have here, a lien does not relate only to when the sentence is increased. Here's the exact quote from a lien that I had in the briefs. A lien describes as Apprendi facts any kinds of facts that alter the prescribed range of sentences to which a defendant is exposed and do so in a manner that aggravates the punishment. So what do we do with the argument that your client under any circumstances has two points because of the IPAS? I disagree with that, Your Honor, because, in fact, non-protunct has absolutely nothing to do with this. And I think counsel is wrong about that. It doesn't matter. The non-protunct issue which so agitated Alba Flores and the IPAS decision of a state court coming in after the fact and manipulating a federal sentence, that doesn't have anything to do with here because it doesn't matter whether it's non-protunct or at some other time. The simple fact is the Superior Court judge terminated probation at a time when only 311 days were served. It doesn't matter whether it was before he went out. Honestly, Your Honor, how could someone who's been deported to Mexico practically come up to the Superior Court judge in Los Angeles or some other part of the Ninth Circuit and ask the judge to remedy the problem with the probation? So the other side says you don't dispute that your client has two points. The problem is, Your Honor, there's 92 points available for a guideline sentence, but when the two points are a prerequisite, a condition precedent to imposing the safety vow, to granting safety vow, which is a prerequisite for imposing the mandatory minimum, that has to be satisfied by the Sixth Amendment protections. There's no problem, of course, because we know there's no apprending problem with calculating the guidelines range and finding facts for that purpose. But when these are facts that are necessary prerequisites to determining the mandatory minimum, then they must meet the apprendiceship criteria. So it can't be harmless error under any circumstance? I would say not, Your Honor, because he's just been denied the protections. There's lots of cases where people have been denied certain things and we conclude it was harmless error. Well, here I would say, Your Honor, it's not harmless because there's some – it's not quite straightforward on the record here what happened here, because although the Superior Court judge terminated, he didn't terminate it as usually happens in these manipulative cases on the day before the instant federal offense. He terminated it to a point three days before. And why would the judge do that? What does that mean? Well, the point is that the record is unclear what the reason was that the judge terminated. Does it make a difference what the reason was? It does, Your Honor, because in Yepes, the court recognized that there are some post hoc changes to a sentence which the guidelines require us to recognize. And that's part of those – one of the things that has to be recognized is when a sentence or when a conviction is altered because of an error of law or because of actual innocence. We just don't know what the reasons were here. Well, if we went and got that record, I'm just going to bet that someone went in there and said, oh, he has other problems now, so if you can get him off probation, that's not going to solve all his problems, but it will certainly help him out. We can certainly say that, Your Honor, but the fact is the record here shows just – the only record is just the order terminating with no reasons. Exactly what are you asking us to tell the district court to do if we were to remand this case for resentencing? Tell us exactly what you want the district court to do. The district court has to, in this case, and because they would be to have a sentencing jury decide the necessary facts for finding the sentence. All the points. Well, Your Honor, as I said – Yes, your answer has to be yes. I will answer yes, Your Honor, yes, but I'm not saying that we would commit or necessarily not stipulate to all – to other facts as well. But in another case, you're asking us to hold that all of those have to go to a jury unless counsel stipulates on one or two or three or four of them. I think that the logic of it would have to be yes, but personally, I don't think that maybe every one of the facts, every one of the requirements for safety valve are necessarily all the printed facts. I just haven't thought it through, Your Honor, and that's why I'm afraid. I honestly can't want to commit myself or me and all other defenders that that's actually the case. Some of them may not be required, but in this case, the one fact that was outstanding, the one thing that kept him from getting safety valve was the criminal history. Yeah, that could be kind of dicey to bring all the proffers in. It could, Your Honor, but there are ways of dealing with this. There are bifurcation proceedings. There are seal proceedings. There are stipulations. There are various ways of dealing with this. Well, but, you know, but I know what the prosecutor would argue. Now, if you're going to cause me – if you make me have to prove it, then don't tell me how I have to prove it, and I'm going to bring all of that in. So that's why I can see why you're backing up a little bit. It would have to be duked out below, Your Honor. Yes, I think. That's the way we do it. We let them duke it out below, and we'll figure out how it works there. Or maybe Congress will answer the question for us by just saying mandatory minimums are just more trouble than normal. All right. Unless there are further questions, this matter will be submitted. Thank you both for your argument in this matter.
judges: Bennett, TROTT, CALLAHAN